## UNITED STATES v. ONE 1936 MODEL FORD V–8 DE LUXE COACH, MOTOR NO. 18—3306511.

### No. 2612.

District Court, W. D. South Carolina.

June 4, 1937.

Oscar H. Doyle, U. S. Atty. (by Edward P. Riley and Thomas A. Wofford, Asst. U. S. Attys.), of Greenville, S. C., for the United States.

Hicks & Johnston (by J. Wilbur Hicks), of Greenville, S. C., for claimant.

WYCHE, District Judge.

On December 3, 1936, officers of the Alcoholic Tax Unit seized a 1936 Ford V-8 De Luxe coupé, motor No. 18—3306511, on the ground that it was being used by one Benjamin Guy Walker in the unlawful transportation of distilled spirits upon which the federal tax had not been paid. An indictment subsequently charged him with such violation of the internal revenue laws, to which he pleaded guilty and upon which he was thereafter duly sentenced in this court.

A libel was filed by the United States of America for the forfeiture of the automobile under section 3450 of the Revised Statutes (26 U.S.C.A. §§ 1156, 1441). The Commercial Credit Company, having an interest in the automobile under a conditional sales contract, of which it is the assignee, intervened and duly made return to the libel, admitted the material allegations thereof, and prayed for a remission or mitigation of forfeiture under the provisions of 27 U.S.C.A. § 40a.

A jury trial was waived and the matter was heard by me at Spartanburg, S. C., on the 3d day of May, 1937. The facts, practically undisputed, as disclosed by the evidence introduced at the trial, are as follows:

The Ford automobile was sold by the Greenville Auto Sales, Incorporated (hereinafter referred to as the dealer), on October 3, 1936, through its agent, to Benjamin Guy Walker, who in part payment of the purchase price of the Ford automobile exchanged an old car paid for by him, but registered in his wife's name. He was given terms for the payment of the purchase price under a conditional sales contract, but the contract, drawn by an agent of the dealer, was made in the name of his brother, Landrum P. Walker, who formally executed the agreement by signing it "L. P. Walker," and who was commonly known as Paul Walker. Benjamin Guy Walker and his wife at the time of the sale were having some domestic infelicities and he had the conditional sales contract drawn and executed in the name of his brother in order to place the title of the new automobile "where his wife could not reach it." Landrum P. Walker had no interest in the transaction except to comply with the request of his brother. Guy Walker made the transaction with the dealer through its agent, Mr. Elrod. He selected the car he wanted, made the agreement, and handled the transaction himself. Paul Walker drove the car from the place of business of the dealer. Guy Walker at the time, and for two or three weeks after the purchase of the car, was living at the home of his brother. Only one payment was made on the conditional sales contract before the seizure, and that was made by Guy Walker to the dealer.

It was admitted by all the parties that Benjamin Guy Walker had a previous record and a reputation for violating both the state and federal laws relating to liquor. His brother, Paul Walker, was convicted of violating the National Prohibition Act (41 Stat. 305) in 1929, and was duly sentenced therefor in this court, but his record and reputation since serving the sentence imposed were good.

On the date the sale was consummated the dealer submitted the contract to the Commercial Credit Company, the claimant here, who accepted by telephone, and subsequently on October 5th, in the usual course of business the dealer assigned the contract to the claimant and received a check for the same.

The claimant before accepting the assignment of the sales contract from the dealer made an investigation of Landrum P. Walker by inquiring at the headquarters of the sheriff of Greenville county, and at the headquarters of the chief of police of the city of Greenville, the county and city where the interest was acquired and the locality where Landrum P. Walker resided, as to the record and reputation for violation of the liquor law by Landrum P. Walker. The information was received from such offices that Landrum P. Walker had no such record or reputation. The information was given, however, from the sheriff's office that Guy Walker had both a record and reputation as a violator of the state and federal laws relating to liquor. No inquiry or investigation was made at the headquarters of the principal federal internal-revenue officer engaged in the enforcement of the liquor laws in that locality, or at the headquarters of any other principal local or federal law enforcement officer of the locality as to Paul Walker, and no inquiry or investigation whatsoever was made of Benjamin Guy Walker, the admitted real owner and purchaser of the automobile.

The claimant had Landrum P. Walker investigated in August, 1936, by the Business Service Bureau of Greenville, S. C.,

472

in connection with his purchase of a refrigerator. However, no investigation at that time was made as to whether or not he had a reputation or record for violating the liquor laws; the investigation did disclose that he had a good reputation in the community where he lived, and such was the reputation given him by his employer at that time.

The claimant purchased the conditional sales contract in good faith, believing that Landrum P. Walker was the purchaser and owner of the automobile. It had no knowledge, information, or suspicion of the true facts until after the automobile had been seized by federal officers.

■ The automobile is subject to forfeiture under the statute (26 U.S.C.A. § 1441). J. W. Goldsmith, Jr.-Grant Co. v. United States, 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376; United States v. One Ford Coupe Automobile, 272 U.S. 321, 329, 47 S.Ct. 154, 157, 71 L.Ed. 279, 47 A.L.R. 1025.

The claimant asks for remission or mitigation of forfeiture on the ground that it is an innocent purchaser of the contract in good faith, without any knowledge or reason to anticipate an illegal use of the car and relies upon the recent act of Congress, known as Liquor Law Repeal and Enforcement Act of August 27, 1935, 49 Stat. 872, § 204 (27 U.S.C.A. § 40a), which provides as follows:

"(a) Jurisdiction of court. Whenever, in any proceeding in court for the forfeiture, under the internal-revenue laws, of any vehicle or aircraft seized for a violation of the internal-revenue laws relating to liquors, such forfeiture is decreed, the court shall have exclusive jurisdiction to remit or mitigate the forfeiture.

"(b) Conditions precedent to remission or mitigation. In any such proceeding the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves (1) that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United

States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

■ The only question involved in this case is whether the facts present a reasonable basis for the exercise by this court of the power created by the foregoing statute to remit or mitigate the forfeiture.

The claimant has an interest in the automobile which was acquired in good faith. The claimant had at no time any knowledge or any reason to believe that the automobile was being, or would be, used in violation of the laws of the United States, or any state relating to intoxicating liquors. The first two requirements of the statute have thus been complied with. The controversy, therefore, revolves around subdivision (3) of the statute (section 204 (b) of the act, 27 U.S.C.A. § 40a (b) (3).

It is claimed by counsel for the United States that this court should not allow the claim for remission or mitigation because the real purchaser of the automobile was Benjamin Guy Walker, who had a record and reputation for violating both the state and federal laws relating to liquors; because the claimant made no effort to investigate the true facts of the transaction under which the said automobile was sold and the ownership transferred to Benjamin Guy Walker, and made no investigation or inquiry of his record and reputation for violating the liquor laws.

The recent decision of the Circuit Court of Appeals of this circuit in the case of C. I. T. Corporation v. United States of America, 89 F.(2d) 977, decided May 7, 1937, disposes of this contention. In that case a dealer sold an automobile to one W. M. Turner under a conditional sales

contract, which on the same date was duly assigned to a finance company. The car was seized from Callie Shelton and Sonny Frazier, who were using it for the unlawful removal and concealment of untaxpaid liquor. Callie Shelton and Edith Shelton, his wife, were the real purchasers of the car. W. M. Turner, the apparent purchaser, permitted his name to be used with no idea that he was a party in interest in the car for the sole purpose of accommodating the Sheltons whom he served as customers of an ice company for which he drove a truck. The dealer knew that the Sheltons were the real purchasers and that Turner had only allowed his name to be used, but the finance company purchased the conditional sales contract in good faith, believing that Turner was the purchaser of the car, and having no knowledge or even suspicion of the true facts until after the car had been seized. Investigation of Turner by the finance company disclosed that he was not a violator and had no reputation of being a violator, of the liquor laws. The Sheltons had a record and reputation as violators of such laws. In reversing the District Court, who denied remission or mitigation of forfeiture, Judge Soper, writing the opinion of the court, said:

"* * * the three statutory conditions were complied with, and we must decide a question not necessarily involved in the prior decision, [C. I. T. Corporation v. United States [C.C.A.] 86 F.(2d) 311] that is, whether the District Court is obliged to remit or mitigate a forfeiture when this situation is found to exist. We think that the court is not so restricted in the exercise of its power. The court is not permitted to strike out a forfeiture unless the statutory conditions are met, but even if they are met, the court may still exercise its judgment and in a proper case decline to remit or mitigate the forfeiture. The language of the statute transferring to the court exclusive jurisdiction to exercise a power formerly exercised in the discretion of officials of the Treasury Department (see 26 U.S.C.A. §§ 1624, 1626; 19 U.S.C.A. § 532) and forbidding the court to act favorably unless the claimant proves that he has complied with the statute, suggests that no other restrictions upon the court were intended. Nevertheless remission or mitigation of a forfeiture when the statutory conditions are met may not be unreasonably withheld, and in passing upon the question in any case the remedial pur-

pose of the statute must be borne in mind. Manifestly the act was passed to ameliorate the hardships suffered by innocent lienors from the seizure of offending vehicles, and the reference in the third condition of the act to interests of the claimant and of the violator of the law in the vehicle under a contract or agreement shows that Congress had especially in mind the rights of finance companies under conditional sales contracts which undoubtedly constitute the most numerous class to which the act applies. In effect, the act merely restored in modified form the protection afforded to innocent lienors by section 26 of title 2 of the National Prohibition Act (41 Stat. 315 [27 U.S.C.A. § 40]). See Richbourg Motor Co. v. United States, 281 U.S. 528, 50 S.Ct. 385, 74 L.Ed. 1016, 73 A.L.R. 1081.

"When the facts of the pending case are approached from this viewpoint, we fail to find sufficient reason in the opinion of the court for the denial of the relief prayed. It cannot be found in the fact that the contract of sale was immediately transferred by a guilty dealer to an innocent lienor, for it may not be supposed that as a rule the dealer would be willing to sell his goods on credit to a known violator of the law and thus run the risk of forfeiture, or that the dealer with guilty knowledge would assign the contract to an innocent finance company and run the risk of a disruption of a helpful business arrangement. Indeed if lienors who accept from dealers assignments of conditional sales contracts immediately after the execution of the papers are excluded from the benefits of the act, the purposes of the act to a large extent will be frustrated. It is common practice for automobile dealers promptly to assign conditional sales contracts to finance companies in order to secure at once the proceeds of the sales."

This court, therefore, cannot refuse to grant the prayer of the claimant for remission or mitigation of forfeiture on this ground.

Counsel for the Government, however, contend that claimant failed to investigate the record and reputation of the fictitious purchaser, Landrum P. Walker, at the headquarters of the principal federal internal-revenue officer engaged in the enforcement of the liquor laws in the locality where the interest was acquired, and where Landrum P. Walker resided, basing such contention upon the theory that the

statute requires that inquiry be made at the headquarters of the sheriff, chief of police, and principal federal internal-revenue officer in such locality.

In disposing of this phase of the statute, the Circuit Court of Appeals of the Second Circuit in an opinion in the case of United States v. One 1935 Dodge Rack-Body Truck, etc., 88 F.(2d) 613, said: "Inquiry as to reputation of purchaser of motor vehicle need not be made at headquarters of all officers mentioned in statute, but negative response obtained upon inquiry at headquarters of any one of them in each locality where inquiry must be made will fulfill minimum of conditions precedent to remission or mitigation of forfeiture."

This construction of the statute is supported by the report of the Chairman of the Committee on the Judiciary of the United States Senate on July 29, 1935, and the Chairman of the Committee on the Judiciary of the House of Representatives on July 22, 1935, in relating the purpose and scope of the bill in the following words: "Certain standards are given to the court to guide it in this determination. Thus, under subsection (b), the claimant must prove that he acquired his interest in good faith, that he had no knowledge or reason to believe that the vehicle or aircraft was being or would be used in violating Federal or State liquor laws, and that, if his interest arises out of, or is subject to, any agreement under which any person having a record or reputation for violating Federal or State liquor laws has a right with respect to the vehicle or aircraft, the claimant, before he acquired his interest, or before the other person acquired his right, whichever of these events occurred later, inquired at the headquarters of *the principal local or Federal law enforcement officer* in the locality where such other person acquired his right, of the locality in which such other person then resided, and of each locality where the claimant made inquiry as to the character or credit standing of such other person, whether the other person had such a record or reputation, and was informed he had not. This last requirement is predicated upon the recognition of the 'bootleg hazard' as an element to be considered in investigating a person as a credit risk. As a matter of sound business practice,

automobile dealers, finance companies, and prospective lienholders on automobiles examine records, and make inquiry of references and credit rating agencies as to the owner's or prospective purchaser's reputation for paying his debts and his ability to do so. This subsection merely requires that in the making of such inquiry, the 'bootleg hazard' also be examined as one aspect of the credit risk." (Italics added.)

At the hearing on the bill before the Committee on the Judiciary of the United States Senate, August 15, 1935, a representative of the Treasury Department testifying before the committee as to the purpose of this section said:

"What this section will do, in the case of any court proceeding for the forfeiture of vehicles or aircraft, is to give the court jurisdiction to determine whether or not the person claiming to have an innocent interest actually had such interest. Under the present practice the Secretary of the Treasury requires such a showing. * * * This section is of particular importance in connection with the discounting by a finance company of an automobile dealer's paper.

"At the present time, the Secretary of the Treasury considers that the bootleg hazard is an element involved in the credit risk, and is just as much a part of the investigation by the finance company of a person as a credit risk as is his financial standing in the community. He requires that before a car be returned to the person claiming an innocent interest, the latter must prove that he made an investigation as to whether or not the purchaser had a bootlegger record, and found that he had none."

The claimant made inquiry at the headquarters of the principal local enforcement officer in the locality where the interest was acquired and where L. P. Walker resided. Therefore, the three statutory conditions have been complied with by the claimant, and since there does not appear to be any fact growing out of the testimony requiring the court to decline to remit or mitigate the forfeiture, the prayer of the claimant must be and is granted.

Counsel may present in due course an appropriate order in accordance with the views expressed in this opinion.